OSTERHAUS, J.,
concurring.
I am sympathetic to the difficulties faced by Mr. Henkel at his condominium and wish that the lobby doors would better allow him to move freely in and out of the building. But the merits of Mr. Henkel’s legal case must turn on the terms of the statute under which he sued. The problem with his Fair Housing Act (FHA), 42 U.S.C. § 3601, et seq., claim is that the law doesn’t allow Mr. Henkel to visit his accessibility problems arising from the design and construction of his building upon a subsequent owner of his building, the respondent condominium association in this case.
To be sure, § 3604(f)(3)(C) of the Act forbids discrimination connected with “the design and construction” of a covered dwelling. The Act specifically says:
(3) For the purposes of this subsection, discrimination includes—
[[Image here]]
(C) in connection with the design and construction of covered multifamily dwellings, a failure to design and construct those dwellings in such a manner that—
(i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
(ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
(iii) all premises within such dwellings contain the following features of adaptive design:
*755 (I) an accessible route into and through the dwelling[.]
In this case, however, the respondent did not design or construct Mr. Henkel’s building, nor make any alterations to the disputed door pressures after assuming ownership of the building. Rather, according to the facts found by the administrative law judge below:
• The condo was developed by an entity named Harbour Pointe Land and Finance, LLC, to whom Respondent is a successor in interest;
• “Respondent had no role in the design or development of the Condominium”;
• The subject entrance and exit doors have opening pressures that vary, but are usually out of compliance with applicable [standards]”;
• “Although the door pressures were out of compliance, Respondent did not install the doors and the evidence was insufficient to show that Respondent altered the doors since it took over operations”; and
• “Despite Petitioner’s allegations, the evidence does not support a finding that any of the door closers that are out of compliance have been altered since ownership of the Condominium was transferred and Respondent became responsible for management and operation of the Condominium.”[1]
These findings were firmly supported by the testimony of multiple witnesses. In fact, the evidence indicated the door pressures aren’t even adjustable. A former association manager testified that in responding to Mr. Henkel’s complaint, “[w]e did have maintenance try to adjust the doors, but they were not adjustable.”
Because Respondent had nothing to do with the design and construction of the condominium’s lobby doors, the Act’s discrimination in § 3604(f)(3)(C) does not apply to it, or require it to fix the nonconforming doors. The FHA’s terms squarely visit design-and-construction discrimination on entities that discriminate “in connection with the design and construction.” And this court is not at liberty under the statute to turn subsequent property owners into guarantors of noncompli-ant designs and construction. Congress could have done it, but not us.
The Eleventh Circuit nailed this issue in Harding v. Orlando Apartments, LLC, 748 F.3d 1128 (11th Cir. 2014), in which a petitioner also attempted to shoehorn an FHA design-and-construction claim against a subsequent owner of his apartment complex. The Eleventh Circuit panel unanimously rejected the claim, finding the statute not to visit design-and-construction discrimination liability on subsequent owners.
Despite the fact that BHDR was not involved in the design or construction of the District, all of Harding’s claims that BHDR violated subsections (f)(1) and (f)(2) are alleged through the lens of the design-and-construction guidelines in subsection (f)(3). Harding alleged a series of inaccessible conditions resulting from Orlando Apartments’ initial failure to comply with the guidelines and argued that BHDR’s failure to remedy those conditions constitutes an independent act of discrimination prohibited by the FHA. Harding’s underlying premise is that § 3604(f)(3)(C) not only requires designers and builders to adhere to certain standards of accessibility but also imposes an ongoing duty on subsequent *756 owners to ensure that a dwelling conforms to those standards. As the FHA’s plain text demonstrates, this premise is erroneous.
Harding at 1131. The Eleventh Circuit correctly noted that the statute’s text connects liability for design-and-construction-related discrimination explicitly to a dwelling’s actual design and construction: “discrimination includes .., —(C) in connection with the design and construction of [a covered dwelling], a failure to design and construct those dwellings in [a non-accessible] manner[.]” 42 U.S.C. § 3604(f)(3)(C) (emphasis added); Harding, 748 F.3d at 1132 (discussing the "plain text” and Congress’ intent). Whereas here, similar to the facts in Harding, the ALJ found that “Respondent had no role in the design or development of the Condominium .., [and had not] altered the doors since it took over operations.”[2]
For these reasons, despite having sympathy for Mr. Henkel’s difficult situation, the text of the FHA prevents us from finding his condo association liable for discrimination and forcing it to modify or replace the doors.

. The Commission’s Order did not dispute the ALJ's findings, nor make any attempt to state "with particularity in the order, that the findings of fact were not based upon competent substantial evidence.” § 120.57(1)(Z), Fla. Stat.

. The Commission's decision and Judge Ma-kar’s opinion cite guidance from the joint statement of two federal agencies as the basis for extending the FHA's coverage to subsequent owners and to this particular Respondent. But the guidance they cite doesn't apply to the facts here. Question 21 of the Joint Statement of HUD and DOJ asked: "May owners of [covered dwellings] make subsequent changes to the building so that it no longer meets the Act’s requirements?” It is true that the guidance answered this question "no.” But Question 21 doesn't apply here because Respondent made no subsequent changes to the lobby doors.